UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

_____

| | |
|---|---|
| **FRANK KELLY CIOTA,** ) | |
| ) | |
| Petitioner, ) | |
| v. ) | Case No. 10-CV-2031 |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |

## **OPINION**

On February 22, 2010, Petitioner, Frank Kelly Ciota, filed a pro se Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255 (#1). On March 22, 2010, Petitioner filed an Amended Motion (#3) with attached exhibits. On April 15, 2010, the Government filed its Response to Petitioner's Motion (#5). On May 3, 2010, Petitioner filed a Reply (#6). On October 4, 2010, Petitioner filed a Supplemental Brief (#9) and, on October 25, 2010, Petitioner filed a Supplemental Motion (#10) seeking to raise an additional claim.

This court has carefully and thoroughly reviewed the arguments of the parties and the documents provided. This court has also reviewed the complete transcripts of Petitioner's guilty plea hearing and the sentencing hearings held before this court. Following this careful consideration, this court rules as follows: (1) Petitioner's original Motion (#1) was superseded by Petitioner's Amended Motion (#3) and is MOOT; (2) Petitioner's Amended Motion (#3) is DENIED; (3) because the additional claim Petitioner has raised was not raised on a timely basis, Petitioner's Supplemental Motion (#10) is DENIED; and (4) because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

FACTS

In Case No. 05-CR-20029, Petitioner was charged, along with his co-defendants Gary Knox and Dennis Wiese, in a 42-page superseding indictment which alleged various counts of bank fraud, mail fraud, wire fraud and conspiracy to commit money laundering. Specifically, Petitioner was charged with one count of bank fraud, one count of wire fraud, five counts of mail fraud and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). The superseding indictment set out in a detailed and specific manner the actions of Petitioner, Knox and Wiese in devising and executing a broad and long-lasting scheme to defraud various real estate lenders, including Central Illinois Bank, Champaign, Illinois, a federally-insured bank, real estate sellers, real estate buyers, and others.

The superseding indictment alleged that Petitioner and his co-defendants "reaped the benefits of the scheme by causing the payment of appraisal fees to Defendant WIESE and by Defendants KNOX and CIOTA converting the profits from the fraudulent transactions to their personal use and using such profits to promote the ongoing fraudulent scheme (emphasis added)." The superseding indictment included numerous allegations that Petitioner and Knox used the "profit" from their scheme to convert to their personal use and to promote the scheme. The superseding indictment alleged that Petitioner and Knox conspired to launder the proceeds of the criminal scheme. The superseding indictment alleged that, as part of this conspiracy, Petitioner and Knox engaged in numerous financial transactions which involved as much as $1,000,000 in bank cashier's checks and personal bank checks. The superseding indictment alleged that these transactions involved the proceeds of their fraudulent scheme, with the intent to promote the carrying on of such scheme and with the intent to conceal and disguise the nature, location, source, ownership, and control of the proceeds of their scheme.

On April 17, 2006, Petitioner, who was represented by retained counsel, Jeffrey T. Page, pleaded guilty to all eight counts of the superseding indictment for which he was charged. At the guilty plea hearing, Petitioner was sworn to tell the truth and stated that he was "[a]ccepting [his] responsibility for the wrongdoings that have taken place during this whole real estate transaction process." Petitioner also stated that he was satisfied with his attorney's representation. After thoroughly discussing the rights Petitioner was giving up by pleading guilty, the Government set out the elements of the charged offenses and then set out in detail the factual basis for the plea. The Government stated:

> The object of the defendants' scheme to defraud was to engage in the practice of fraudulent real estate "flipping" whereby the defendants made false representations, including false real estate appraisals, fraudulent real estate appraisals prepared by Defendant Wiese and used by Defendants Knox and Mr. Ciota, that caused real estate owners to sell, real estate buyers to purchase, and lending institutions to finance rental real estate properties that were sold at prices which the defendants, including Mr. Ciota, caused to be fraudulently inflated to substantially higher than their reasonable value.

The Government specifically referenced occasions where Petitioner and Knox used the profit from their scheme to convert to their personal use and to promote the scheme. The Government referred to several specific sales and stated, for example:

> That particular transaction involved the sale of property at 1145 North Pine Street in Decatur to a seller for $43,000, which was more than three times the amount of the legitimate sales price

that the seller had bought the property only a few years before. $25,000 in profit from that fraudulent sale was then converted by Defendants Knox and Ciota to their personal use and to promote the scheme.

The Government discussed another transaction "in which an additional piece of property owned by Mr. Knox's business which he had purchased for $13,500 was sold to Mr. Ciota's relatives for an inflated price of $75,000, $50,000 of which - - $50,000 - - resulting in $50,000 in profit which Mr. Knox and Mr. Ciota converted to their personal use and to promote their scheme."

After the Government completed its detailed discussion of the factual basis for the guilty plea, this court then addressed Petitioner directly and stated:

You're not contesting the factual basis as to the elements of the offense. You're pleading guilty to the elements of the offense because you are, in fact, guilty of violating those eight counts as set forth in the statute; is that correct?

Petitioner, who had sworn to tell the truth, answered "[y]es, sir." This court then accepted the guilty plea as "freely, voluntarily, knowingly, intelligently made."

The sentencing hearing was continued numerous times and finally commenced on December 18, 2007. At the hearing, the Government presented the testimony of Daniel Bergan, who presented lengthy testimony regarding the nature of the scheme and the amount of the loss incurred because of the real estate transactions. Bergan also testified that Petitioner engaged in fraud in helping his daughter obtain student loans and used some of the proceeds from the loans to pay his attorney. Petitioner's counsel presented the testimony of Dr. Jay Riseman. Dr. Riseman testified extensively regarding Petitioner's serious medical conditions, including diabetes, hypertension, osteoarthritis and psoriasis. Dr. Riseman also testified regarding Petitioner's twin

sons, who were 12 years old on the date of the hearing. Dr. Riseman testified that the twins were born prematurely and suffered from numerous disabilities, including cerebral palsy. Dr. Riseman testified that the boys required a great deal of assistance and care in their daily lives and that it would be difficult for one parent to take care of both boys on a day-to-day basis. Dr. Riseman also testified that one of the boys, Tony, needed to have surgery in the near future and would need even more extensive care following the surgery. During cross-examination, Dr. Riseman testified that Petitioner's obesity was the cause of some of his medical problems.

There was not enough time to complete the cross-examination of Bergan, so the sentencing hearing was continued to a later date and resumed on February 4, 2008. At that hearing, Petitioner's counsel cross-examined Bergan extensively regarding Petitioner's late entry into the scheme and limited role in the transactions. Bergan testified that Petitioner's role was to recruit buyers and, on occasion, to find homes in the Springfield area. Bergan testified that Petitioner received a portion of the proceeds from the sale of the homes, which sometimes was $5000. Bergan testified that Petitioner also sometimes made repairs on the homes to make them look better and collected rent. Petitioner's attorney presented testimony from Petitioner's wife, Kathy Ciota (Kathy). Kathy provided additional testimony regarding the impairments the twin boys have and the boys' need for a great deal of assistance in their daily lives. She testified that she usually worked with Tony and Petitioner usually worked with the other twin, Frank. Kathy testified that she had surgery for scoliosis when she was 15 and has restrictions on her ability to pick things up and move them around. The twins both weigh much more than the amount she can lift. Kathy testified that Petitioner's being away from the boys to serve a term in the Federal Bureau of Prisons would be "devastating in every way." She also testified that Tony was scheduled to have his surgery on March 3, 2008. She stated that, after his surgery, he would be in a full length leg cast for eight to twelve weeks. Petitioner's attorney then played a videotape for

5

the court, with Kathy providing narration, which showed the boys' condition and Petitioner's interaction with them. Petitioner's counsel also provided this court with a letter from Barnes Hospital in St. Louis regarding Tony's scheduled surgery and a letter from a school aide who provided individual aid to the twins.

An in camera proceeding was also held and Petitioner's attorney presented evidence regarding Petitioner's cooperation and the information Petitioner provided to Government agents. After all of the evidence was presented, the sentencing hearing was again continued. Petitioner's sentencing hearing resumed on February 20, 2008. At this hearing, Petitioner's counsel presented extensive argument regarding Petitioner's objections to the presentence investigation report (PSR). This court accepted Petitioner's counsel's argument that Petitioner was entitled to a reduction in his offense level based upon acceptance of responsibility, and this court reduced Petitioner's offense level by three levels. In doing so, this court rejected the position taken in the PSR, and argued by the Government, that Petitioner should not receive any reduction for acceptance of responsibility because he engaged in another fraud involving his daughter's three student loans after he was indicted in this case. Because this court accepted Petitioner's counsel's argument regarding acceptance of responsibility, this court determined that Petitioner's sentencing guidelines range under the advisory sentencing guidelines was 78 to 97 months rather than the sentencing guidelines range of 108 to 135 months calculated in the PSR. Once again, the sentencing hearing was continued.

On March 12, 2008, Petitioner's sentencing was finally completed. At the hearing, this court noted that Petitioner's counsel had previously called witnesses in mitigation. Petitioner's counsel then presented lengthy argument regarding the sentencing factors under 18 U.S.C. § 3553(a) and also urged this court for a significant downward departure from the sentencing guidelines range because of the extraordinary family circumstances present in this case. Petitioner

6

also presented a lengthy allocution. Petitioner stated that Tony had his surgery, as scheduled, on March 3 and was in a cast. Petitioner stated that, when Tony came out of the cast, he would have to use a wheelchair. Petitioner discussed the fact that his wife needed him at home to help with the twin boys and their daughter, who has emotional problems. Petitioner stated that he could not "even imagine Kathy trying to deal with these problems herself."

When imposing sentence, this court noted that Petitioner's counsel had made an impassioned argument, but found that "it rings hollow to me with this kind of criminality, repeated criminality in this case, repeated criminality in your life, on probation while the scheme started." This court discussed the factors under § 3553(a) and imposed a sentence of 97 months, followed by a 5-year term of supervised release. This court ordered Petitioner to self-report to the Federal Bureau of Prisons on June 27, 2008. Petitioner filed a Notice of Appeal.

On May 15, 2008, this court held a hearing on restitution and ordered Petitioner to pay, jointly and severally with his co-defendants, $478,439 in restitution. The Seventh Circuit Court of Appeals appointed the Federal Defender's office to represent Petitioner on appeal. On June 6, 2008, Petitioner, through his appointed counsel, filed a Motion to Continue Scheduled Surrender Date. Petitioner stated that Tony had complications following his surgery and Petitioner's wife simply could not care for him on her own. Petitioner asked that his surrender date be continued to September 25, 2008. Petitioner's request was granted and September 26, 2008, was set as Petitioner's surrender date.

On June 30, 2008, the Seventh Circuit allowed the Federal Defender's office to withdraw as counsel and Attorney Kent R. Carlson was appointed to represent Petitioner on appeal. On February 18, 2009, Attorney Carlson wrote a letter to Petitioner and informed Petitioner that he had determined, and confirmed with several of his colleagues, that there were no non-frivolous issues to be raised on appeal. On March 4, 2009, Petitioner filed a Motion for Dismissal of

Appeal with the Seventh Circuit Court of Appeals, and his appeal was dismissed on March 6, 2009.

As noted previously, Petitioner then filed, on February 22, 2010, his pro se Motion to Vacate, Set Aside or Correct Sentence (#1) in this court. On March 22, 2010, Petitioner filed his Amended Motion under § 2255 (#3). Petitioner claimed that he was denied the effective assistance of counsel because: (1) his trial counsel and counsel on appeal did not challenge the money laundering offense charged in the indictment, claiming he is actually innocent of this charge; and (2) his counsel was ineffective at sentencing. Petitioner attached portions of the record and his own affidavit in support of his claims. In its Response, the Government argued that Petitioner's claims are entirely without merit. Petitioner's Motion has been thoroughly briefed and is ready for ruling.

## ANALYSIS

This court first notes that relief under 28 U.S.C. § 2255 is reserved for extraordinary situations. Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996), citing Brecht v. Abrahamson, 507 U.S. 619, 633-34 (1993). Accordingly, a petitioner may avail himself of relief under § 2255 only if he can "demonstrate that there are flaws in the conviction or sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." Boyer v. United States, 55 F.3d 296, 298 (7th Cir. 1995). Based upon this standard, and the record in this case, this court agrees with the Government that Petitioner has not included any claims which would warrant an evidentiary hearing or relief under 28 U.S.C. § 2255.

Petitioner's claims are based upon his assertion that he was denied the effective assistance of counsel. "The Sixth Amendment to the Constitution accords criminal defendants the right to effective assistance of counsel." Wyatt v. United States, 574 F.3d 455, 457 (7th Cir. 2009), cert. denied, 130 S. Ct. 1925 (2010). To succeed on a claim of ineffective assistance, a petitioner must

prove: (1) his attorney's performance fell below an objective standard of reasonableness; and (2) he suffered prejudice as a result. Strickland v. Washington, 466 U.S. 668, 678-88, 693 (1984); Wyatt, 574 F.3d at 457-58. With respect to the performance prong of the two-part test, a petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Wyatt, 574 F.3d at 458, quoting Strickland, 466 U.S. at 689. A petitioner "must establish the specific acts or omissions of counsel that he believes constituted ineffective assistance" and the court then determines "whether such acts or omissions fall outside the wide range of professionally competent assistance." Wyatt, 574 F.3d at 458. Regarding the prejudice prong of the two-part test, the petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694.

PETITIONER'S CLAIMS

1. MONEY LAUNDERING CONVICTION

Petitioner argues that he is "actually innocent" of the money laundering offense based upon United States v. Santos, 553 U.S. 507 (2008) and, therefore, his trial counsel and counsel on appeal were ineffective for failing to raise this issue.

In Santos, the defendant was convicted of one count of conspiracy to run an illegal gambling business, one count of running an illegal gambling business, one count of conspiracy to launder money and two counts of money laundering. Santos, 553 U.S. at 509-510. The defendant's convictions were affirmed on appeal. However, in ruling on the defendant's motion under § 2255, the district court vacated the defendant's money laundering convictions based upon the Seventh Circuit's decision in United States v. Scialabba, 282 F.3d 475 (7th Cir. 2002). Santos, 553 U.S. at 510. In Scialabba, the Seventh Circuit "held that the federal money-laundering statute's prohibition of transactions involving criminal 'proceeds' applies only to transactions

involving criminal profits, not criminal receipts." Santos, 553 U.S. at 510, citing Scialabba, 282 F.3d at 478. The Seventh Circuit affirmed the district court's ruling, based upon Scialabba. Santos, 553 U.S. at 510.

The United States Supreme Court granted certiorari, and affirmed. Justice Scalia, joined by Justices Souter, Ginsburg, and Thomas, determined that the term "proceeds" in the money laundering statute was ambiguous because, "[f]rom the face of the statute, there is no more reason to think that 'proceeds' means 'receipts' than there is to think that 'proceeds' means 'profits.'" Santos, 553 U.S. at 514. Justice Scalia then stated, "[u]nder a long line of our decisions, the tie must go to the defendant. The rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." Santos, 553 U.S. at 514.

Justice Stevens wrote a separate opinion concurring in the judgment. Justice Stevens did not agree that the term "proceeds" meant the same thing in every situation. Santos, 553 U.S. at 525-26 (Stevens, J., concurring). Justice Stevens stated that the Court did not need to "pick a single definition of 'proceeds' applicable to every unlawful activity." Santos, 553 U.S. at 525 (Stevens, J., concurring). For Justice Stevens, the meaning of "proceeds" should turn on whether legislative history indicates that Congress intended to reach the gross revenues of a specified crime. Santos, 553 U.S. at 525-26 (Stevens, J., concurring); see also United States v. Lee, 558 F.3d 638, 643 (7th Cir. 2009). Justice Stevens concluded that the "revenue generated by a gambling business that is used to pay the essential expenses of operating that business is not 'proceeds' within the meaning of the money laundering statute." Santos, 553 U.S. at 528 (Stevens, J., concurring).

Chief Justice Roberts and Justices Alito, Kennedy and Breyer dissented. In his dissenting opinion, Justice Alito stated that, considered in context, it was clear that "the term 'proceeds' in

the money laundering statute means gross receipts, not net income." Santos, 553 U.S. at 546 (Alito, J., dissenting).[1]

This court concludes that Petitioner does not have a legitimate argument based upon Santos. This court first notes that, "[g]iven the divergent views of the plurality and the concurrence, courts have debated the impact of Santos beyond illegal gambling cases." United States v. Rezko, 2008 WL 4890232, at *5 (N.D. Ill. 2008). This court recognizes, however, that the Seventh Circuit has applied the holding in Santos to offenses other than illegal gambling. See Lee, 558 F.3d at 641-45 (operation of spas which were fronts for prostitution); United States v. Hodge, 558 F.3d 630, 632-34 (7th Cir. 2009) (operation of a brothel); United States v. Malone, 484 F.3d 916, 921-22 (7th Cir. 2007) (drug conspiracy). In any event, most importantly, it is clear in this case that Petitioner's conviction of money laundering is based upon the laundering of the net proceeds or profits of the criminal activity. The indictment in this case specifically referred to the profits from the scheme. In fact, the indictment made clear that Petitioner and Knox conspired to launder the "profits" of their scheme. It is beyond question that the "proceeds" referred to in the indictment were the net proceeds or profits from the scheme. Therefore, the Government is correct that Santos does not provide a basis for challenging the indictment in this case.

This court further concludes that Petitioner's conviction is completely proper under Santos. The Government provided a lengthy recitation of the factual basis for the guilty plea at the guilty plea hearing and Petitioner, who was under oath, agreed that he was not contesting the factual basis as to the elements of the offenses and was pleading guilty because he was in fact guilty. The facts presented at the guilty plea hearing show that the money laundering conviction

---

[1] This court notes that, in response to the decision in Santos, Congress amended § 1956 on May 20, 2009. Following the 2009 amendment, "proceeds" is defined as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9).

was based upon the laundering of the net proceeds or profits of the underlying fraudulent activity. Therefore, Petitioner's conviction is perfectly proper under Santos. See Rezko, 2008 WL 4890232, at *6. Petitioner is not "actually innocent" of money laundering. This court concludes that Petitioner was properly convicted of money laundering and the Santos decision does not support Petitioner's argument that his trial counsel and counsel on appeal were ineffective for failing to challenge his conviction of money laundering.

2. INEFFECTIVE ASSISTANCE OF COUNSEL AT SENTENCING

Petitioner has also argued that his counsel was ineffective at sentencing. This court concludes that Petitioner has completely failed to show that his counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by any deficiency in his counsel's performance.

Petitioner first argues that he was denied the effective assistance of counsel because his counsel advised him to say "no" when this court asked him if he had any objections to the PSR other than those raised by his counsel. This court concludes that this argument is entirely without merit. The record shows that Petitioner's counsel argued objections to the PSR, with some success, leading to a reduction in Petitioner's offense level and sentencing guidelines range. Petitioner has not stated that he had any objections not raised by counsel that he wanted to raise. Moreover, he has not shown that he was prejudiced by his counsel's advice because he has not shown that there was a reasonable probability that any objections would have been successful.

Petitioner has also argued that he was denied the effective assistance of counsel because his counsel did not present mitigating evidence at sentencing and did not present evidence regarding the § 3553(a) factors. This claim requires little discussion because it is not true. Petitioner's counsel presented the testimony of Dr. Riseman and Petitioner's wife, and also presented additional evidence including in camera testimony regarding Petitioner's cooperation

12

and a videotape showing Petitioner's twin sons and Petitioner's interaction with them. Petitioner's counsel provided this court with extensive evidence regarding Petitioner's medical conditions and heartbreaking evidence regarding the condition of Petitioner's twin boys. This court took all of this evidence into consideration in sentencing and imposed sentence following a discussion of the § 3553(a) factors. In arguing that there was mitigating evidence his counsel should have presented, Petitioner has not provided any specifics regarding what that evidence would have been. Petitioner has referred to a private investigator that he hired at his counsel's advice to prove that he did repair work on the homes. Petitioner stated that his counsel did not present the investigator's report to this court at sentencing. Petitioner has not provided this court with a copy of the investigator's report or even a summary of the information included in the report. This court notes that Bergan testified, during cross-examination by Petitioner's counsel, that Petitioner sometimes made repairs on the homes to make them look better. Petitioner has not shown that the investigator's report would have been anything other than cumulative of the testimony his counsel elicited from Bergan and clearly has not shown a reasonable probability that the outcome of the sentencing hearing would have been different if his counsel had presented the investigator's report to this court.

After careful review of the record in this case, this court concludes that Petitioner's counsel provided excellent representation for Petitioner throughout the lengthy sentencing proceedings in this case, which took place over the course of four different dates. In sum, Petitioner has not shown that he was denied the effective assistance of counsel at sentencing.

## SUPPLEMENTAL MOTION

On October 25, 2010, Petitioner filed a document entitled "Supplemental 28 U.S.C. §2255 Motion/Pleading." Petitioner stated that he wanted to raise an additional claim under § 2255. He

stated that his claim is that both the probation department and his defense counsel failed to investigate the overall circumstances regarding his prior conviction of deceptive practices.

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), a one-year period of limitations applies to motions filed under § 2255. 28 U.S.C. § 2255(f). The United States Supreme Court has stated that "Congress enacted AEDPA to advance the finality of criminal convictions." Mayle v. Felix, 545 U.S. 644, 662 (2005). "To that end, it adopted a tight time line, a one-year limitation period ordinarily running from 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'" Mayle, 545 U.S. at 662, quoting 28 U.S.C. § 2244(d)(1)(A). The Supreme Court therefore held that a timely filed habeas petition cannot be amended to add new, unrelated claims after the AEDPA's one-year limitation period has run. Mayle, 545 U.S. at 662-64; see also Jackson v. United States, 2007 WL 1062923, at *2-3 (C.D. Ill. 2007) (applying Mayle to a request to amend a Motion under § 2255); United States v. Hull, 2006 WL 752481, at *1 (N.D. Ind. 2006) (court refused to consider claims brought in supplemental motions under § 2255 which were barred by the one-year statute of limitations).

In this case, Petitioner's appeal was dismissed on March 6, 2009, and the one-year statute of limitations began to run on that date. Petitioner filed his Motion under § 2255 on February 22, 2010. This Motion was timely and raised the claims this court has thoroughly discussed. No new claims could be raised after the statute of limitations ran on March 6, 2010. See Mayle, 545 U.S. at 662-64; Jackson, 2007 WL 1062923, at *2-3. Petitioner's Supplemental Motion, which raised an entirely new claim, was filed after the one-year limitation period had run and is time-barred.

CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings, this court denies a certificate of appealability in this case. A certificate of appealability may issue only if the

applicant "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Therefore, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This court concludes that jurists of reason would not find it debatable whether Petitioner's Motion states a valid claim of the denial of a constitutional right.

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's original Motion (#1) was superseded by Petitioner's Amended Motion (#3) and is MOOT.

2) Petitioner's Amended Motion (#3) is DENIED.

(3) Because the additional claim Petitioner has raised was not raised on a timely basis, Petitioner's Supplemental Motion (#10) is DENIED.

(4) Because Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability is DENIED.

(5) This case is terminated.

ENTERED this __10th__ day of November, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE